# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE AT NASHVILLE

In re
**GWENDOLYN CAMILLIA WALLACE**

       **Debtor**

v.                                **No. 3:25-ap-90059**

                                   **JURY DEMAND**

**EVA M. LEMEH**              **JUDGE NANCY B. KING**
**V.**
**NAPOLEON EDMONDSON**
**Defendant/Third Party Plaintiff**
v.
**GWENDOLYN CAMILLIA WALLACE**
**DEBTPR/Third-Party Defendant**

## MOTION FOR LEAVE TO APPEAL INTERLOCUTORY ORDER

Napoleon Edmondson ("Edmondson"), Defendant/Third-Party Plaintiff, by and through undersigned counsel, respectfully moves this Honorable Court for leave to appeal the Bankruptcy Court's interlocutory order entered on October 8, 2025, granting the Trustee's Motion to Dismiss Counts I, II, III, IV, V, XI, and XIII of the Third-Party Complaint pursuant to 28 U.S.C. § 158(a)(3) and Fed. R. Bankr. P. 8004.

## I. FACTS NEEDED TO UNDERSTAND THE QUESTION PRESENTED

1. This adversary proceeding arises from a disputed June 27, 2019, quitclaim deed executed during the late Napoleon Glass's cognitive decline, in which the Debtor, Gwendolyn Wallace, acquired a 100% fee simple interest in the real property located at 120 Islandia Drive, Nashville, Tennessee for no consideration. Napolean Edmonson is the son and only heir of Mr. Glass.

2. Edmondson alleges that the 2019 deed was procured by fraud, undue influence, or forgery. This issue was resolved in a 2022 deed when Wallace conveyed her interest in

the property to Edmondson on January 29, 2022, giving Edmondson a remainder fee simple interest while she maintained a life estate. This conveyance came after Edmondson by and through counsel sent a letter on January 8, 2021, to Wallace asking that the 2019 deed be rescinded to avoid litigation.

3. After the Wallace filed Chapter 7, the Trustee initiated this adversary proceeding seeking to avoid Edmondson's 2022 interest under the Fraudulent Conveyance Act T.C.A. § 66-3-301 via the strong-arm provisions of 11 U.S.C. § 544. Edmondson filed a Third-Party Complaint against the Debtor asserting thirteen counts including fraud, forgery, rescission, quiet title, and constructive trust- seeking to set aside the 2019 Deed. 4. The Trustee moved to dismiss Counts I, II, III, IV, V, XI, and XIII, arguing they were barred by Tennessee's three-year statute of limitations and insufficiently pled under Rule 12(b)(6).

5. Edmondson opposed, arguing that (a) the fraud claims did not accrue until after the 2022 settlement deed was threatened by the Trustee's action; (b) equitable tolling and estoppel applied due to Debtor's conduct; and (c) the limitations issue could not be resolved at the pleading stage.

6. On October 8, 2025, the Bankruptcy Court granted the Trustee's motion, dismissing the above counts.

## II. QUESTION PRESENTED

Whether the Bankruptcy Court erred in granting the Trustee's Rule 12(b)(6) motion and dismissing Edmondson's fraud, forgery, and rescission claims on statute of limitations grounds where (a) the pleadings raised factual questions regarding accrual and tolling,

and (b) the claims were extinguished by the 2022 deed, leaving no live cause of action to accrue or be time-barred.

## III. RELIEF SOUGHT

Mr. Edmondson seeks leave to appeal the interlocutory order of the Bankruptcy Court to the U.S. District Court for the Middle District of Tennessee pursuant to 28 U.S.C. § 158(a)(3), and for such other relief as the Court deems just.

## IV. ARGUMENT

**THE BANKRUPTCY COURT EXCEEDED THE FOUR CORNERS OF THE PLEADINGS AND MISAPPLIED THE STATUTE OF LIMITATIONS BECAUSE THE 2022 DEED EXTINGUISHED ANY FRAUD CLAIM ARISING FROM THE 2019 DEED**

Leave to appeal should be granted because the Bankruptcy Court committed two interrelated legal errors when it dismissed Counts I, II, III, IV, V, XI, and XIII of Edmondson's Third-Party Complaint: (1) it improperly relied on facts and inferences outside the four corners of the pleading, and (2) it misapplied the statute of limitations by treating the 2019 deed as the operative accrual point, even though the 2022 deed extinguished any fraud claim years earlier.

### A. The Court exceeded the Rule 12(b)(6) standard by going outside the pleadings.

Under the well-established Rule 12(b)(6) standard, courts are limited to the allegations of the complaint, documents incorporated by reference, and matters of which judicial notice may be taken without drawing inferences against the nonmoving party. To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matters to state a claim for relief that is plausible on its face. **Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007**). In determining the validity of

a motion to dismiss for failure to state a claim, the court need not accept as true legal conclusions or unwarranted factual inferences but the court must construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff.. **(Fed. R. Civ. P. 12(b)(6); IN RE: SADLON 595 B.R. 260 (BR. S.D. Ohio W.D.) (September 4, 2018).** Consequently, to survive the filing of a motion to dismiss, the complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." ***Varljen v. Cleveland Gear Co., Inc.*, 250 F.3d 426, 429 (6th Cir. 2001).**

Here, the Third-Party Complaint alleges that Edmondson learned of the alleged fraud in 2021, issued a demand letter, and reached a negotiated resolution in January 2022 through the execution of a corrective deed restoring his property interest. The pleading does not allege that he had constructive notice in 2019, nor does it concede any statute-of-limitations bar.

Despite this, the Bankruptcy Court based its ruling on a judicially constructed timeline tied to the date of the 2019 deed's recording, drawing legal conclusions about when the claim accrued and expired. It treated constructive notice as established fact and resolved tolling and accrual questions against Edmondson — issues that are not appropriate for resolution at the motion-to-dismiss stage.

***B. The 2022 deed extinguished the fraud claim, leaving no cause of action to accrue or be time-barred.***

Even assuming constructive notice existed in 2019, Edmondson's allegations make clear that any fraud claim tied to that deed was extinguished when Wallace executed the 2022 corrective deed. Under Tennessee law, a cause of action accrues only when all

elements, including actual injury, are present. Fraud requires injury as an essential element. When the alleged injury has been cured through subsequent agreement or transaction, there is no live claim and no limitations period can run.

Without injury after the new deed was executed, a plaintiff would have had no standing to bring a fraud claim. Courts in Tennessee have consistently held that damages are an essential element of fraud. **Inner images, Inc v. Robert Newman et al, *579 S.W.3d 29* (Tenn Ct, App. 2018).** Any statute of limitations defense premised on failing to sue before June 27, 2022, collapses, because no fraud claim could have been filed before then due to the January 29, 2022, deed. A defendant cannot rely on an "expired" limitations period when the cause of action had not yet accrued or had been extinguished by subsequent events that extinguish any judicial remedies for the Plaintiff. A cause of action does not accrue, so as to trigger statute of limitations, until a judicial remedy is available. **First Community Mortgage v. Appraisal, 644 SW.3d (Tn Ct. App. 2021).**

Here, Edmondson alleges that after learning of the 2019 deed, he sent a demand letter, engaged counsel, and obtained a 2022 deed that restored his remainder interest while Wallace retained a life estate. That corrective transaction resolved the dispute and eliminated any injury arising from the 2019 deed. At that point, Edmondson had no claim to bring, and no cause of action existed to accrue or expire. The only reason the dispute resurfaced was because the Trustee later sought to set aside the 2022 deed, reviving an otherwise extinguished controversy. The Bankruptcy Court's order erroneously treated the 2019 deed as if it remained actionable throughout the entire period, ignoring the pleaded fact that the 2022 transaction had resolved the dispute.

### C. The error is both legal and procedural.

The Bankruptcy Court did not convert the motion to dismiss into one for summary judgment under Rule 12(d), nor did it allow Edmondson to submit evidence. Instead, it made factual determinations on accrual and tolling, disregarded the curative effect of the 2022 deed, and substituted its own narrative for the allegations in the complaint. This deprived Edmondson of the protections of Rule 12(b)(6) and resulted in a dismissal that is legally unsound. In fact, on page one, footnote one of the court's opinion, it notes that facts relied on in its opinion came from both the adversary proceeding and the main case, facts outside of the Edmondson's third-party complaint. (Memo Opinion page 1).

This issue is precisely the type of controlling legal error appropriate for interlocutory review under 28 U.S.C. § 158(a)(3). It goes to the core of the case because it wipes out multiple causes of action based on a timeline the plaintiff never pled, involving facts the court inferred, and a claim that no longer existed after 2022.

## VII. THE BANKRUPTCY COURT APPLIED THE WRONG STATUTE OF LIMITATIONS — TENNESSEE LAW PROVIDES A SEVEN-YEAR PERIOD FOR FRAUD CLAIMS INVOLVING DEEDS AND REAL PROPERTY

The Bankruptcy Court's dismissal order rests on the mistaken application of the three-year limitations period in Tenn. Code Ann. § 28-3-105, which applies to ordinary property torts. That was legal error. Edmondson's claims — particularly Counts I, II, III, IV, V, XI, and XIII — arise from alleged fraud and forgery involving a real estate conveyance (the June 27, 2019 quitclaim deed). Under Tennessee law, the applicable limitations period for such claims is seven years pursuant to Tenn. Code Ann. § 28-2-103 and related caselaw.

**A. Tennessee recognizes a seven-year statute of limitations for fraud affecting title to land.**

Tenn. Code Ann. § 28-2-103 provides:

"No person shall have any action, either at law or in equity, for the recovery of any lands, tenements or hereditaments, but within seven (7) years after the right of action accrued."

Tennessee courts have applied this seven-year period to claims seeking to set aside a deed for fraud, forgery, undue influence, or other equitable challenges to title. **Orlando Residence, Ltd. v. Nashville Lodging Co., No. 01A-01-9606-CH-00256, 1996 WL 724915 (Tenn. App. Dec. 18, 1996), perm. to appeal denied, concurring in result only (May 19, 1997)**,

These claims are legally and doctrinally distinct from the three-year statute applied to general property torts such as trespass or nuisance under Tenn. Code Ann. § 28-3-105. Edmondson's Third-Party Complaint seeks to rescind and set aside a deed on grounds of fraud and forgery, not recover for property damage. The Bankruptcy Court therefore applied the wrong statutory period.

**B. The seven-year statute was still running at the time of filing — no claim is time-barred.**

Even assuming, for argument's sake, that Edmondson's claim accrued in July 2019 when the quitclaim deed was recorded (which Edmondson does not concede), the seven-year limitations period would **not expire until July 2026**.

Edmondson's claims were asserted in this adversary proceeding in **2025** — well within the seven-year period prescribed by Tennessee law. Dismissing the claims on limitations grounds under a shorter three-year period was premature and legally incorrect.

**C. The Court's reliance on § 28-3-105 misclassified the claims.**

The Trustee's motion and the Court's order treated Edmondson's claims as if they were ordinary tort claims for injury to real property, rather than equitable claims to rescind a deed based on fraud. That misclassification led directly to the wrong limitations period being applied.

Tennessee law draws this distinction carefully: tort actions involving injury to land fall under § 28-3-105 (three years), while actions to recover or set aside title based on fraud, forgery, or undue influence fall under § 28-2-103 (seven years). See *Benz-Elliott v. Barrett Enterprises, LP*, 456 S.W.3d 140 (Tenn. 2015) (courts must identify the true gravamen of the claim to determine the correct statute of limitations). The gravamen here is fraudulent procurement of a deed — not damage to the land itself.

**D. Because the Court applied the wrong statute of limitations, the dismissal order is legally erroneous and warrants interlocutory review.**

The choice of statute of limitations is a **pure legal question**. Application of the wrong statute is reversible error. By applying a three-year period rather than the correct seven-year limitations period, the Bankruptcy Court prematurely dismissed Edmondson's core claims and effectively deprived him of a remedy expressly recognized under Tennessee law.

Interlocutory review is warranted because correcting this error now will restore legally viable claims, avoid piecemeal litigation, and materially advance the resolution of this case.

**VIII. RELIEF SOUGHT-Specified**

For the foregoing reasons, Defendant/Third-Party Plaintiff Napoleon Edmondson respectfully requests that this Honorable Court:

1. Grant this Motion for Leave to Appeal pursuant to 28 U.S.C. § 158(a)(3) and Fed. R. Bankr. P. 8004;

2. Accept for interlocutory review the Bankruptcy Court's October 8, 2025 order dismissing Counts I, II, III, IV, V, XI, and XIII of the Third-Party Complaint;

3. Reverse or vacate the dismissal order to the extent it is based on:

   o (a) reliance on facts and inferences outside the four corners of the pleading,

   o (b) misapplication of the statute of limitations, including failure to apply the correct seven-year period under Tenn. Code Ann. § 28-2-103,

   o (c) ignoring the extinguishment of the 2019 fraud claim by the 2022 corrective deed, and

   o (d) improper resolution of accrual and tolling issues at the Rule 12(b)(6) stage;

4. Remand the case to the Bankruptcy Court with instructions to reinstate Edmondson's claims and allow the matter to proceed on the merits; and

5. Grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

**Wade Law Firm**

*/s/ Lorraine Wade*

Lorraine Wade, BPR No. 22331
199 Enon Springs Rd W Suite 100
Smyrna,          Tennessee
37167
Lorrainewade@wadelaw.net
(615) 915.0289
*Counsel  for  Defendant,  Third-Party
Napoleon Edmondson*

### CERTIFICATE OF SERVICE

This document was sent via the Federal Court Court's electronic filing system, via electronic mail and U.S. Mail to the following:

Justin T. Campbell

Thompson Burton

1801 West End Ave Suite 1550,

 Nashville, Tennessee 37203

email justin@thomsonburton.com

On this 21st day of October 2025.

s/Lorraine Wade/s

**ATTACHMENTS**

Pursuant to Fed. R. Bankr. P. 8004(a)(2), Edmondson attaches:

• Exhibit A: Bankruptcy Court Order Granting Trustee's Partial Motion to Dismiss

(Oct. 8, 2025)

• Exhibit B: Edmondson's Response to Motion to Dismiss

• Exhibit C: Trustee's Memorandum of Law

• Exhibit D: Third-Party Complaint

Respectfully submitted,

WADE LAW

By: /s/ Lorraine Wade
Lorraine Wade, Esq.
Attorney for Napoleon Edmondson
199 Enon Springs Rd W Suite 100

Smyrna, Tennessee 37167

Lorrainewade@wadelaw.net

SO ORDERED.
SIGNED 8th day of October, 2025

THIS ORDER HAS BEEN ENTERED ON THE DOCKET.
PLEASE SEE DOCKET FOR ENTRY DATE.



Nancy B. King
U.S. Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | 3:25-bk-01435 |
| GWENDOLYN CAMILLA WALLACE | ) | Chapter 7 |
| | ) | Judge Nancy B. King |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| EVA M. LEMEH, Trustee, | ) | Adv. No. 3:25-ap-90059 |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NAPOLEON EDMONDSON, | ) | |
| | ) | |
| Defendant/Third Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GWENDOLYN CAMILLIA WALLACE, | ) | |
| | ) | |
| Debtor/Third-Party Defendant. | ) | |

---

## MEMORANDUM OPINION

---

The Trustee, who is Plaintiff and Counter-Defendant in this Adversary Proceeding,

("Trustee") filed a Motion to Dismiss, in-part, the Third-Party Complaint filed by Napolean

Edmondson ("Edmondson") for failure to state a claim for which relief can be granted pursuant to

Federal Rule of Civil Procedure 12(b)(6), as made applicable by Federal Rule of Bankruptcy

Procedure 7012. Edmondson opposes the Motion. The Court finds that the Trustee's Motion should be GRANTED.

## STANDARD FOR MOTION TO DISMISS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 550 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft*, 556 U.S. at 678 8(internal quotation marks and citations omitted). "We are required to construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Jordan v. Pritchard* (*In re Pritchard*), 633 B.R. 314, 326 (Bankr. E.D. Tenn. 2021).

## BACKGROUND[1]

Edmondson, a resident of California and the only child of the late Napoleon Glass ("Glass"), has been centrally involved in legal disputes regarding the Nashville property located at 120 Islandia Drive. Glass purchased this home in 2003 and lived there with Gwendolyn Wallace ("the Debtor"), with whom he shared a long-term relationship; however, they never married. After purchasing the property, it became encumbered by a mortgage in Glass's name only.

---

[1] There are several related contested matters pending in the main case, where Edmondson is represented by different counsel. The factual allegations set forth here incorporate facts as alleged in both the adversary proceeding and the main case to create a full picture. These factual findings are for purposes of ruling on the Trustee's Motion to Dismiss.

2

In 2016, Glass began exhibiting signs of cognitive decline, including significant dementia, which ultimately led to his admission to a mental health facility after an incident where he became lost while driving. Following his release, Edmondson and the Debtor received access to Glass's bank and mortgage accounts in order to assist with his finances and ensure the mortgage was paid. Edmondson noticed recurring delinquencies on the mortgage and made several payments himself to prevent foreclosure. After confronting the Debtor about these delinquencies, communication between them soured, and the Debtor ceased keeping Edmondson informed about Glass's medical care.

By May 2019, Glass's condition had worsened considerably, rendering meaningful conversation difficult. He required the Debtor's assistance for medical appointments, medication schedules, and transportation. During this period, Edmondson observed that Glass's speech became slurred and suspected a stroke, prompting discussions with the Debtor about arranging hospice care. Throughout this time, Edmondson understood from his father that the intention was for him to have the house, keeping it within the family, while not objecting to the Debtor remaining, provided she continued paying the mortgage.

On June 27, 2019, only a few days after Edmondson's discussion with the Debtor about hospice, Glass, accompanied by the Debtor, went to an attorney's office, wherein Glass executed a quitclaim deed transferring a fifty percent ownership interest in the property to the Debtor. The deed stipulated joint tenancy in common with a right of survivorship, and it expressly precluded Glass's heirs from inheriting his interest. Less than two months later, Glass passed away. Glass and the Debtor did not have separate legal representation when Glass executed the quitclaim deed. Edmondson believed that due to Glass's declining mental state and early-stage Alzheimer's diagnosis, he would never have knowingly signed away his property interest without proper

Case 25-26-90059330 Doc 15 Filed 10/09/25 10 Entered 10/09/25 09:52:46 Page Desc Main
Document    Page 3 of 11

consideration or understanding. Alternatively, Edmondson alleged that the Debtor forged Glass's signature.

Edmondson, through counsel, demanded that the Debtor address the situation—advising that without a resolution, legal action would be taken against her. Ultimately, to avoid litigation, the Debtor agreed to execute another quitclaim deed in January 2022, granting Edmondson a fifty percent ownership interest. This 2022 deed redefined the property interests: the Debtor retained a life estate, ensuring possession during her life, while Edmondson acquired a contingent remainder. The deed contained explicit restrictions—the Debtor could not sell or transfer her interest to anyone other than Edmondson's heirs, and upon her death, ownership would vest in Edmondson's heirs, legal representatives, or assigns.

In concert with the 2022 deed, Edmondson's attorney presented a supplemental agreement. Edmondson offered to pay all mortgage arrears in exchange for the Debtor's agreement to notify him if future delinquencies occurred and to transfer her remaining interest to him if she could not maintain the payments. On advice of her counsel, the Debtor refused to sign this agreement, instead agreeing to maintain regular mortgage payments as a life tenant.

Despite the 2022 resolution, the Debtor failed to maintain the mortgage. The property entered arrears and foreclosure status. On August 31, 2022, the Debtor filed for Chapter 13 bankruptcy protection, listing Edmondson as a joint owner. The mortgage proof of claim in this proceeding reflected the property's foreclosure status and substantial prepetition arrears.

The initial Chapter 13 plan proposed by the Debtor contemplated the sale of the property within 90 days, with the proceeds to be split between the Debtor and Edmondson. The plan named an incorrect address for Edmondson (using a rental property address rather than his California residence, although he was clearly aware of the Chapter 13 filing), and the Debtor did not seek

4

Edmondson's agreement before filing bankruptcy or putting the sale plan in motion. Edmondson, when approached about selling, declined. The Debtor then amended her plan to cure the mortgage arrears and maintain her life estate.

After the Debtor failed to adequately fund her Chapter 13 plan, the bankruptcy was voluntarily dismissed in February 2024. She then filed a second Chapter 13 in May 2024, again proposing to pay the mortgage and unsecured debts. This plan was confirmed, but the Debtor defaulted after five months due to non-payment. This case was also voluntarily dismissed in March 2025.

On April 3, 2025, the Debtor filed for Chapter 7 bankruptcy protection. The Trustee moved to administer the estate and initiated an adversary proceeding within weeks, seeking to set aside the 2022 transfer to Edmondson and liquidate the property. The property was valued at over $400,000, with approximately $170,000 owed on the mortgage and $35,000 claimed as a homestead exemption by the Debtor.

 Throughout this period, Edmondson contended that Wallace systematically used the bankruptcy process to delay foreclosure—allowing her to live rent-free in the property for nearly two years—while placing his remainderman interest at risk. Beyond the harm to his financial interest, Edmondson has asserted that Wallace's behavior—acquiring a property interest from Glass during a period of significant cognitive impairment, withholding information about bankruptcy filings and property status, and failing to abide by agreements—amounted to bad faith and abuse of the legal process.

Case 25-25-90059030 Doc 15 Filed 10/09/25 10/09/25 Entered 10/09/25 09:52:46 Page Desc Main Document    Page 5 of 11

## COUNTS AS ALLEGED BY EDMONDSON

Based on the above, Edmondson sets forth the following causes of action, and the Trustee seeks dismissal with regards to Counts I, II, III, IV, V, XI, and XIII:

| | Count Number and Summarized Allegations | Trustee Seeks Dismissal? |
|---|---|---|
| I- | Actual and Constructive Fraud/Undue Influence and/or Duress (concerning the signing of the June 27, 2019, deed) | YES |
| II- | Forgery (concerning the signing of the June 27, 2019, deed) | YES |
| III- | Declaratory Judgment (concerning rights under the June 27, 2019, Deed) | YES |
| IV- | Quiet Title (concerning Debtor's alleged fraud with respect to the June 27, 2019, deed) | YES |
| V- | Recission of Deed (concerning the signing and conduct surrounding the June 27, 2019, deed) | YES |
| VI- | Equitable Estoppel and Judicial Estoppel (concerning the Debtor's conduct in prior bankruptcy filings) | NO |
| VII- | Breach of Oral Contract (concerning the settlement in 2022) | NO |
| VIII- | Promissory Estoppel (concerning the settlement in 2022) | NO |
| IX- | Unjust Enrichment (concerning Edmondson not filing a lawsuit but instead settling in 2022) | NO |
| X- | Exemption from Bankruptcy Discharge (concerning prior bankruptcy disclosures and the 2002 quitclaim deed) | NO |
| XI- | Recission of Deed (repeat of Count V) | YES |
| XII- | Injunction- Bankruptcy Court Injunctive Relief under 11 U.S.C. § 105(a); Rule 7065 (requesting the Debtor be enjoined from damaging or transferring the property) | NO |
| XIII- | Constructive Trust (concerning the 2019 transfer of property). | YES |

## DISCUSSION

The Trustee alleges that Counts I, II, III, IV, V, XI, and XIII should be dismissed as barred by the statute of limitations. All of these claims relate to Edmondson's allegations of fraud, fraudulent conduct, or forgery with respect to the 2019 Deed. Edmondson contends that the 2022 settlement agreement and newer 2022 deed caused the 2019 fraud claims to become "moot." The statute of limitations only began to run upon Edmondson's "discovery" that the Debtor did not comply with her obligations under the settlement agreement. Additionally, or alternatively,

6

Edmondson contends the statute of limitation was "equitably tolled" because the Debtor misled Edmondson into failing to file an earlier action.

To determine the statute of limitations, the Court looks to state law. *Colebrook v. Thompson* (*In re Thompson*), 2024 WL 1876102, at *6 (Bankr. M.D. Tenn. Apr. 29, 2024), *aff'd*, 668 B.R. 156 (B.A.P. 6th Cir. 2025). The Trustee contends that Tennessee's three-year statute of limitations applies because Edmondson's allegations regarding the applicable Counts sound in property tort actions. Edmondson does not set forth what statute of limitation he believes applies (except with regard to the recission claim in Count V--seven years); he instead relies on the argument regarding equitable tolling or that the statute has not run because of the 2022 settlement agreement.

T.C.A. § 28-3-105 provides:

The following actions shall be commenced within three (3) years from the accruing of the cause of action:

(1) Actions for injuries to personal or real property;

T.C.A. § 28-3-105 (West). *Demarest v. Kovacevich*, 2025 WL 2375372, at *6 (M.D. Tenn. Aug. 14, 2025) (quoting *Koshani v. Barton*, 374 F. Supp. 3d 695, 702 (E.D. Tenn. 2019) ("Tennessee also applies a three-year statute of limitations to tort actions involving injuries to personal or real property.")). In order to determine if an action is a property tort action, the court must look to the gravamen of the claims. *Benz-Elliott v. Barrett Enters., LP*, 456 S.W.3d 140, 141 (Tenn. 2015) ("We hold that a court must identify the gravamen of each claim alleged to determine the applicable statute of limitations. Identifying the gravamen of a claim requires a court to consider both the legal basis of the claim and the injury for which damages are sought."). Every single factual and legal theory in Edmondson's Counts I-V, XI, and XIII is based on the alleged fraud of the Debtor up to and including the execution of the 2019 quitclaim deed. "Suits for fraud, deceit or conspiracy, whether they arise incident to a contract or not are actions in tort and must

be governed by the applicable tort statute of limitations." *Harvest Corp. v. Ernst & Whinney*, 610 S.W.2d 727, 729–30 (Tenn. Ct. App. 1980).

Under Tennessee law, a cause of action for fraud or intentional misrepresentation accrues when "'a plaintiff discovers, or in the exercise of reasonable care and diligence, *should have discovered,* his injury and the cause thereof.'" *Ne. Knox Util. Dist. v. Stanfort Constr. Co.*, 206 S.W.3d 454, 459 (Tenn. Ct. App. 2006) (citation omitted) (emphasis added). *See also Colebrook v. Huffman* (*In re Huffman*), 2024 WL 1715136, at *6 (Bankr. M.D. Tenn. Apr. 19, 2024), *appeal dismissed sub nom.*, 2024 WL 2974542 (B.A.P. 6th Cir. June 13, 2024). Under any set of facts presented by Edmondson, the misrepresentations and/or fraud of the Debtor occurred more than three years ago. Edmondson relies upon two theories to rebut the passage of time: (1) the 2022 settlement agreement somehow temporarily suspended the cause of action and/or (2) the statute was equitably tolled by the Debtor's actions.

### 1. Prelitigation Settlement Did Not Suspend the Statute of Limitations

The parties' 2022 settlement was just that, a settlement. Notable is the complete absence of any agreement by the parties to toll or somehow suspend the applicable limitations statute if either party failed to fulfill their obligations. Courts have recognized that "[s]ettlement negotiations are by no means an 'extraordinary circumstance' that would prevent a plaintiff from diligently and timely pursuing his or her rights. Such a broad exception would swallow the general limitations rules, as the majority of parties involved in a legal conflict are involved in some form of negotiations prior to filing suit." *Randy's Towing, LLC v. Charter Twp. of Oscoda*, 2016 WL 4429620, at *2 (E.D. Mich. Aug. 22, 2016); *see also Towerco 2013, LLC v. Berlin Twp. Bd. of Trustees,* 110 F.4th 870, 885 (6th Cir. 2024) (emphasizing that "[T]here is no evidence that the parties intended to toll any statute of limitations when they entered into the joint stay" and that

"their agreement was silent on tolling."); *Johnson v. Long John Silver's Rests., Inc.*, 320 F. Supp. 2d 656, 660 (M.D. Tenn. 2004) (noting that the parties began settlement negotiations and entered into a joint stay and tolling agreement, expressly providing that the statute of limitations would be tolled with respect to all class members for a certain amount of time); *Omnipoint Holdings, Inc. v. City of Southfield*, 203 F. Supp. 2d 804, 814 (E.D. Mich. 2002) (holding equitable tolling did not apply to TCA plaintiff's 30-day time limit based on pre-suit negotiations); *Raziano v. United States*, 999 F.2d 1539, 1541 (11th Cir. 1993) ("[P]re-suit negotiations to settle do not ordinarily estop a defendant from later asserting a limitations defense."); *DannaMarie Provost v. Hall*, 757 F. App'x 871, 877 (11th Cir. 2018) (holding that settlement negotiations did not toll limitations period where there was no "indication that plaintiffs ever asked Royal Caribbean to consent to an extension of the contractual limitation period while the parties engaged in settlement negotiations").

By Edmondson's rendition of the facts, Glass executed a quitclaim in July 2019. Edmondson demanded that the Debtor address the Islandia deed, advising that without a resolution, legal action would be taken against her. In resolution, the Debtor agreed to execute another quitclaim deed in January 2022, granting Edmondson a fifty percent ownership interest. A separate agreement contained the obligation to maintain the mortgage. Nothing in the parties' resolution contained a tolling agreement, and no tolling occurred from the settlement alone.

### 2. **Equitable Tolling**

To successfully raise a claim of equitable tolling, a party must show either fraudulent concealment of the critical facts that would lead one to know that he can sue, or a misrepresentation of those facts—whether made in good faith or not—that was calculated to induce a plaintiff to forego the right to sue. *Diminnie v. United States,* 728 F.2d 301, 305 (6th Cir.), *cert. denied,* 469

9

U.S. 842 (1984); *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991). "Strictly defined, equitable tolling is [t]he doctrine that the statute of limitations will not bar a claim if the plaintiff, despite diligent efforts, did not discover the injury until after the limitations period had expired." *Still v. Bowers* (*In re McKenzie*), 510 B.R. 573, 583 (Bankr. E.D. Tenn. 2014) (quoting *Tapia–Martinez v. Gonzales,* 482 F.3d 417, 422 (6th Cir. 2007) (internal quotation marks and citation omitted). "Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control[.]Absent compelling equitable considerations, a court should not extend limitations by even a single day." *Id.* (citing and quoting *Graham–Humphreys v. Memphis Brooks Museum of Art, Inc.,* 209 F.3d 552, 560 (6th Cir. 2000)) (internal quotation marks omitted). The reason equitable tolling is to be narrowly applied is that statutes of limitation are "vital to the welfare of society and are favored in the law." *Hill v. U.S. Dep't of Labor,* 65 F.3d 1331, 1336 (6th Cir.1995) (quoting *Wood v. Carpenter,* 101 U.S. 135 (1879)).

Edmondson's essential facts to invoke equitable tolling are: (1) the Debtor's failure to perform the agreement that required her to make mortgage payments, (2) the Debtor living in the home without paying, and (3) the Debtor filing for bankruptcy protection induced Edmondson not to file suit. Edmondson cannot now say he did not know he should have acted before the statute of limitations expired.

The Court will not invoke either equitable tolling or equitable estoppel to toll the limitations period. Edmondson does not allege facts that plausibly show that, when considering the above-outlined factors, he is entitled to equitable tolling of the limitations period due to circumstances beyond Edmondson's control. *In re McKenzie*, 510 B.R. at 583.

Based on the foregoing, the Court finds that the Trustee's Motion to Dismiss Counts I, II, III, IV, V, XI, and XIII should be granted. Having found that Counts I, II, III, IV, V, XI, and XIII should be dismissed, the Court need not address the Trustee's Motion regarding ==Federal Rule of Civil Procedure 9(b)== made applicable by ==Federal Rule of Bankruptcy Procedure 7009== to those same counts.

<u>**CONCLUSION**</u>

Based on the foregoing, the Court finds that the Trustee's Partial Motion to Dismiss Counts I, II, III, IV, V, XI, and XIII pursuant to ==Federal Rule of Civil Procedure 12(b)(6)==, made applicable by Federal Rule of Bankruptcy 9006, is well taken.

An appropriate Order will be entered.

---

> **THIS MEMORANDUM OPINION WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE**

# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE AT NASHVILLE

In re
**GWENDOLYN CAMILLIA WALLACE**

       **Debtor**

**v.**                         **No. 3:25-bk-01435**
                                **JURY DEMAND**

**EVA M. LEMEH**              **JUDGE NANCY B. KING**
**V.**
**NAPOLEON EDMONDSON,**

## NAPOLEAN EDMONDSON'S RESPONSE IN OPPOSITION TO TRUSTEE'S PARTIAL MOTION TO DISMISS ADVERSARY PROCEEDING

      Comes now Third-Party Plaintiff, Napolean Edmondson ("Mr. Edmondson") hereby responds to the Trustee's Motion for Partial Dismissal Adversary Proceeding. Based on the below, Mr. Edmondson seeks the court deny the motion.

## FACTUAL AND PROCEDURAL BACKGROUND

      Mr. Edmondson's complaint challenges a quitclaim deed executed on June 27, 2019, and recorded on July 9, 2019, by Gwendolyn Camilla Wallace ("Wallace"), who was then serving as caretaker for Mr. Glass.  *(Answer and Third-Party Compl.)*.  At that time, Mr. Glass was gravely ill, cognitively impaired, and dependent on Wallace, rendering him unable to understand or voluntarily execute the transfer. ( *Third-Party Compl. ¶¶ 54-60*). Alternatively, the deed is alleged to be a forgery. Edmondson did not discover the fraudulent nature of the transaction until January 8, 2021, when he compared signatures and confirmed Mr. Glass's incapacity, at which time his counsel sent a demand letter

placing Wallace on notice that if the matter was not settled a lawsuit would be filed.  (*Third-Party Compl. ¶¶ 61-65*).  The complaint has thirteen counts: Count 1: Actual and constructive fraud/undue influence and/or Duress;   Count 2: Forgery;   Count 3: Declaratory Judgment; Count 4:  Quiet Title, Count 5:  Rescission of Deed;  Count 6: Equitable Estoppel and Judicial Estoppel; Count 7:   Breach of Contract; Count 8: Promissory Estoppel;   Count 9:   Unjust Enrichment; Count 10: Exemption from Bankruptcy Discharge; Count 11:  Rescission of Deed; Count 12: Injunction-Bankruptcy Court Under 11 U.S.C. Sec 105(a); Rule 7065; Count 13:  Constructive  Trust

Trustee seeks dismissal of Counts 1, 2, 3, 4, 5, 11, and 13 as time-barred or insufficiently pled. On the face of the pleadings—and under Rule 12(b)(6)'s standard—dismissal is improper. The Third-Party Complaint alleges (i) a June 27, 2019 quitclaim deed recorded July 9, 2019; (ii) Mr. Glass's grave cognitive/respiratory illness at the time of execution; (iii) Debtor's caretaker relationship and undue influence; (iv) alternatively, forgery; and (v) Edmondson's discovery of the fraud on January 8, 2021, and immediate notice to Wallace through counsel and subsequent settlement of those allegations which tolls any such statute of limitations.

<h3 style="text-align:center">STANDARD OF REVIEW</h3>

To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matters to state a claim for relief that is plausible on its face. **Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)**.  In determining the validity of a  motion to dismiss for failure to state a claim, the court need not accept as true legal conclusions or unwarranted factual inferences but the court must construe the

complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff.. **(Fed. R. Civ. P. 12(b)(6); IN RE: SADLON 595 B.R. 260 (BR. S.D. Ohio W.D.) (September 4, 2018).** Consequently, to survive the filing of a motion to dismiss, the complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." ***Varljen v. Cleveland Gear Co., Inc.*, 250 F.3d 426, 429 (6th Cir. 2001).** [1]

## ARGUMENT

I.      The Trustee's limitations defense fails. – Counts 1, 2, 4,5, 11. 13

It is important to note that Mr. Edmondson's claims regarding the fraud, forgery and rescission of the 2019 deed are only viable if this court declares the 2022 deed void or voidable.

A statute-of-limitations dismissal at Rule 12(b)(6) lies only where the bar is apparent from the complaint itself. The Trustee acknowledges that state SOLs govern and that dismissal is permitted only where the pleadings establish the bar. Here, they do not. Statutes of limitation are meant to protect defendants from prejudice because of undue delay and to guard against loss of evidence over the passage of time. *See Smith v. Grumman–Olsen Corp., 913 F.Supp. 1077, 1083 (E.D.Tenn.1995)*.

---

[1] Trustee in footnote 1 states that this court may take judicial notice of all Exhibits attached to "this Motion to Dismiss and Memorandum in Support" however no documents are attached to the Motion or the Memorandum, so this argument will not be addressed.

The Trustee characterizes the gravamen of the counts as fraud/injury to real property and invokes a three-year period under Tenn. Code Ann. § 28-3-105, running from deed execution, recording, or discovery, and argues expiration by June/July 2022 or, at latest, January 8, 2024. When deciding this issue, state law applies. In bankruptcy, just as in diversity, state substantive law defines the parties' underlying rights and obligations. **In re Dow Corning Corp., 778 F.3d 545, 60 Bankr.Ct.Dec. 176 (6th Cir. 2015).**

The Trustee argues that since the Third-Party Complaints alleges that Mr. Edmondson found out about the fraud on January 8, 2021, that somehow the statute of limitations prohibits him from filing this claim now. The Trustee has failed to point out that the Third-Party Complaint. also alleges that when Mr. Edmondson discovered the fraud, he sent a letter to Wallace and requested: "….that the matter be settled in lieu of a lawsuit being filed against her." Wallace then retained Ms. Love, the same lawyer that drafted the 2019 Quit Claim deed to handle the situation. (*Third-Party Comp. ¶ 65).* As a result of negotiations, Ms. Wallace signed the 2022 deed giving Mr. Edmondson an interest in the property while she retained a life estate. " *(Third-Party Compl. ¶¶ 64-66).* Once the deed was signed on January 29, 2022, Mr. Edmondson's fraud claim expired and became moot.

A statute of limitations only starts running once a cause of action has accrued. If the fraud claim was mooted (no damages, no viable claim), then no statute of limitations began to run because there was nothing to sue over. To argue "he should have sued earlier" ignores the fact that fraud requires actual injury. Without injury after the new deed was executed, a plaintiff would have had no standing to bring a fraud claim. Courts in Tennessee have consistently held that damages are an essential element of fraud. **Inner**

images, Inc v. Robert Newman et al, *579 S.W.3d 29 (Tenn Ct, App. 2018).* Any statute

of limitations defense premised on failing to sue before June 27, 2022, collapses, because

no fraud claim could have been filed before then due to the January 29, 2022, deed.    A

defendant cannot rely on an "expired" limitations period when the cause of action had not

yet accrued or had been extinguished by subsequent events that extinguish any judicial

remedies for the Plaintiff.    A cause of action does not accrue, so as to

trigger statute of limitations, until a judicial remedy is available.    **First Community**

**Mortgage v. Appraisal, 644 SW.3d (Tn Ct. App. 2021).**

The Trustee relies on constructive notice.  This is error.  Constructive notice only

fixes the outer limit of when a claim could accrue, but a statute of limitations cannot run

on a claim that was extinguished by settlement before it ever ripened into a justiciable case.

Once Ms. Wallace executed the 2022 deed, there was no fraud injury left to sue over.

Constructive notice of the 2019 deed becomes irrelevant because the injury had been

resolved before limitations ever expired."

Even if there was a viable claim prior to the Trustee's complaint attempting to  set

aside the  2022 deed- Equitable tolling applies.   The doctrine of "equitable estoppel," tolls

the running of the statute of limitations where the defendant has "misled the plaintiff into

failing to file [his] action within the statutory period of limitations." *Norton v.*

*Everhart,* 895 S.W.2d 317, 321 (**Tenn**. 1995); *see also  See Am. Mutual Liab. Ins. Co. v.*

*Baxter,* 210 **Tenn**. 242, 247–**48**, 357 S.W.2d 825, 827 (1962); *Bernard v. Houston Ezell*

*Corp.,* 968 S.W.2d 855, 862 (Tenn.Ct.App.1997); *Sparks v. Metro. Gov. of Nashville,* 771

S.W.2d  430,  433  (Tenn.Ct.App.1989).[2] Where  equitable  estoppel  has  been  raised,

therefore, a court must determine whether the defendant engaged in conduct specifically

designed to prevent the plaintiff from suing in time. **Quoting Fahrner v. SW Mfg., Inc.,** 48 S.W.3d 141, 145–46 (**Tenn. 2001**).

In this case it was obvious that the Plaintiff did engage in conduct specifically designed to prevent Mr. Edmondson from suing. The allegations in the Third-Party Complaint state that the parties entered into a settlement agreement that stopped Mr. Edmondson from filing a lawsuit against Wallace relating to the execution of the 2019 deed. *(Third-Party Compl. ¶¶ 64-73).* Ms. Wallace's actions in signing the new deed in 2022 are the reasons why a lawsuit for fraud, rescission and forgery was not filed against her before June 27, 2022- A classic example of equitable tolling. *(Third-Party Compl. ¶¶ 64; 73; 103; 109).*

Moreover, Mr. Edmondson is not only seeking damages but also cancellation and rescission. Therefore, the three- year statute of limitations under T.C.A. Sec. 28-3-105 does not apply. In **Orlando Residence, Ltd. v. Nashville Lodging Co., No. 01A-01-9606-CH-00256,** 1996 WL 724915 (**Tenn. App. Dec. 18, 1996), perm. to appeal denied, concurring in result only (May 19, 1997)**, the Court held that an action to set aside a fraudulent conveyance is governed by the seven-year statute set forth in Tennessee Code Annotated § 28-2-103 which states:

(a) No person or anyone claiming under such person shall have any action, either at law or in equity, for the recovery of any lands, tenements or hereditaments, but within seven (7) years after the right of action accrued.

(b) No possession of lands, tenements or hereditaments shall be deemed to extend beyond the actual possession of an adverse holder until the muniment of title, if any, under

which such adverse holder claims such lands, tenements or hereditaments is duly recorded in the county in which the lands are located.

In his Third-Party Complaint Mr. Edmondson has asked for rescission and voidance. **(Third-Party Compl. ¶¶¶ 79,82, 91, 126).** To apply a three year of statute of limitations would be require an interpretation of the Third-Party Complaint unauthorized by the review standard for Rule 12 motions for failure to state a claim.

## II. The Third-Party Complaint specifically pleads facts for fraud pursuant to Rule 9- Count 1, 2, 3, 5, 11, and 13.

The Third-Party Complaint correctly pleads fraud-based theories with sufficient particularity under Rule 9(b) . With respect to Rule 9(b), federal courts have recognized that allegations of undue influence or forgery are inherently fact-intensive and cannot be dismissed where the complaint specifies the challenged transaction, timing, roles, and misconduct. **U.S. ex rel. Bledsoe v. Community Health Sys., Inc.*, 501 F.3d 493, 504 (6th Cir. 2007) .** Rule 9(b) is satisfied where the complaint provides sufficient context to put a defendant on notice of fraudulent conduct. **Id.**

Federal Rule of Civil Procedure 9 (b) states:

> **Fraud or Mistake; Conditions of Mind.** In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.

Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. **Ashcroft v. Iqbal, 556 U.S. 662 (2009).**

The Trustee correctly argues that the "who what when and where and how" must be alleged and it has. Rule 9(b) requires the "who, what, when, where, and how," read in context the Third-Party Complaint alleges:

- Who: Debtor Wallace (caretaker of Mr. Glass) and Mr. Glass. (Third-Party Compl.)

- What: Execution of a quitclaim deed transferring survivorship rights; alternatively, forgery of Mr. Glass's signature; undue influence/duress. *(Third-Party Compl. 50-69).*

- When/Where: June 27, 2019, execution, Wallace was accompanied to attorney Adrienne Love's office to execute a quitclaim deed for his property located in Nashville, Tennessee. *(Third-Party Compl. ¶ 54)*

- How/Why: Debtor used a position of trust over a gravely ill, cognitively compromised grantor to procure the transfer; Edmondson later compared signatures and contests authenticity. *(Third-Party Compl. ¶¶ 56, 57, 58, 59, 60)*

The Trustee makes the argument that Mr. Edmondson does not provide the particulars of how the recorded deed was signed but the Third-Party Complaint clearly states that Wallace was Mr. Glass's caregiver who lived with him and used her position to get him to either sign over his property or forged his signature. The Third-Party Complaint also states that she used her own attorney, Adrienne Love to accomplish this goal. These allegations are not vague or conclusory but are fact specific.

The pleading must also "allege the time, place, and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent

of the defendants; and the injury resulting from the fraud." **Sanderson v. HCA-The Healthcare Co.,** 447 F.3d 873, 877 **(6th Cir. 2006).** The mere reading of Third-Party Complaint proves that the time of the fraud was June 27, 2019, the place was Adrienne Love's Office, and the content and alleged fraudulent scheme, intent and injury was the taking advantage of Mr. Glass's when he signed a deed that gave Wallace a 100% interest in his home depriving Mr. Edmondson, his only heir of his inheritance. This is enough. The existence of confidential or fiduciary relationship, together with a transaction by which the dominant party obtains benefit from other party, gives rise to presumption of undue influence that may be rebutted. **Matlock v. Simpson,** 902 S.W.2d 384 (**Tenn. 1995).** The Trustee argues that Mr. Edmondson does not provide particulars of how the recorded deed was signed by a notary public was fraudulently executed even though the law creates a rebuttable presumption of undue influence simply by relationship.

The Trustee also argues that the forgery is not specifically pled. However, Mr. Edmondson states in his complaint that he believes the signature was forged because he is familiar with his father's handwriting *(Third-Party Compl. ¶ 61)*. This familiarity is enough. **United States v. Robby Harris,** 786 F.3d 443 (6th Cir. 2015)

III. Counts for declaratory relief, quiet title, rescission, and constructive trust are equitable/remedial and rise or fall with the underlying claims—premature to dismiss now. The Trustee groups Counts 3, 4, 5, 11, and 13 as "fraud-based." Even if the Court were to trim or re-plead any "fraud" count, the equitable remedies (declaratory judgment, quiet title, rescission, constructive trust) should proceed because they are the vehicles for adjudicating title and remedying any proven undue influence/forgery. Early dismissal risks fragmenting merits issues that will be resolved on a fuller record.

## Conclusion

Taking the allegations as true and drawing all reasonable inferences in Edmondson's favor, the Trustee has not shown that seven counts are barred as a matter of law or that the pleadings fail Rule 9(b)/Rule 8. The Court should deny the Partial Motion to Dismiss as to Counts 1, 2, 3, 4, 5, 11, and 13, or alternatively grant leave to amend.

Respectfully submitted,

**Wade Law Firm**

*/s/ Lorraine Wade*

Lorraine Wade, BPR No. 22331
199 Enon Springs Rd W Suite 100
Smyrna, Tennessee 37167
Lorrainewade@wadelaw.net
(615) 915.0289
*Counsel for Defendant, Third-Party Napoleon Edmondson*

## CERTIFICATE OF SERVICE

This document was sent via the Federal Court Court's electronic filing system, via electronic mail and U.S. Mail to the following:

Justin T. Campbell

Thompson Burton

1801 West End Ave Suite 1550,

 Nashville, Tennessee 37203

email justin@thomsonburton.com

On this 21st day of August 2025.

s/Lorraine Wade/s

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

In re: GWENDOLYN CAMILLIA WALLACE,      Chapter 7
    Debtor.                                      Case No. 3:25-bk-01435

EVA M. LEMEH, TRUSTEE,             Adv. Proc. No. 3:25-ap-90059
    Plaintiff,                                  Judge Nancy B. King
v.

NAPOLEON EDMONDSON,
    Defendant/Third-Party Plaintiff,

v.

GWENDOLYN CAMILLIA WALLACE,
Third-party Defendant,

## <u>NAPOLEON EDMONDSON'S ANSWER, AFFIRMATIVE DEFENSES AND THIRD-PARTY COMPLAINT</u>

       COMES NOW Defendant, Napolean Edmondson, by and through undersigned counsel, and submits this Answer to the Complaint and Affirmative Defenses and Third-Party Complaint, responding to the allegations as follows:

---

### SPECIFIC ANSWERS

### (Paragraphs 1-23)

1.  Defendant admits the allegation.

2.  Defendant admits this allegation.

3.  Defendant admits this allegation.

4.  Defendant admits this allegation.

Case 3:25-ap-90059 Doc 6 Filed 06/26/25 Entered 06/26/25 17:46:05 Desc Main
Document Page 1 of 15

5.  Defendant admits this allegation.

6.   Defendant admits this allegation.

7.  Defendant admits this allegation.

8.  Defendant admits this allegation.

9.  Denied, Mr. Edmondson states that the Debtor was not a "party" to the 2019 Quitclaim deed since it was procured by fraud/duress and maybe by forgery based on Mr. Edmondson's knowledge of his father's signature.  But he admits that she is on the deed that is attached as Exhibit A

10. Defendant admits this allegation.

11. Denied the deed was procured by fraud/duress or forgery.

12. Defendant denies this allegation except that she lives in the property.

13. Defendant admits this allegation.

14. The Defendant denies this allegation.

15. Admit but deny that it was a "transfer" in the sense that Mr. Edmondson believes the 2019 Deed was procured by fraud/duress/or forgery.

16. Defendant admits this allegation.

17. Defendant admits this allegation.

18. The Defendant denies this allegation., it was signed as a result of settlement negotiations. Both parties had lawyers.

19. The Defendant denies this allegation.

20. Defendant admits this allegation.

21. Defendant denies this allegation and states this is a conclusory statement and not fact.

22. Defendant admits this allegation but states that the mortgage is not in the name of the debtor but in the name of Napoleon Glass- who is now deceased

23. The Defendant denies this allegation.

## COUNT 1: AVOIDANCE OF FRAUDULENT TRANSFER PURSUANT TO T.C.A. § 66-3-101 ET. SEQ AND T.C.A. § 66-3-301 VIA THE STRONG ARM PROVISIONS OF 11 U.S.C.§ 544(B)

24. The Defendant incorporates his previous responses as if stated herein.

25. Defendant denies this statement and strict proof is demanded.

26. The Defendant denies this allegation.

27. The Defendant denies this allegation.

28. Admit but deny that this was a "transfer" due to fraud /duress/or forgery

29. The Defendant denies this allegation.

30. The Defendant denies this allegation.

31. The Defendant denies this allegation.

32. The Defendant denies this allegation and the elements under the UFTA, T.C.A. § 66-3-301 et. seq. are not properly pled.

33. The Defendant denies this allegation and the elements under the UFTA, T.C.A. § 66-3-301 et. seq are not properly pled.

34. The Defendant denies this allegation.

35. The Defendant denies this allegation

## COUNT 2: APPROVAL OF SALE OF REAL PROPERTY AND PARTITION OF

## PROCEEDS FROM SALE OF REAL PROPERTY PURSUANT TO 11 U.S.C.

## §363(h)

36. The Defendant incorporates his previous responses as if stated herein.

37. The Defendant denies this allegation.

38. The Defendant denies this allegation.

39. The Defendant denies this allegation.

40. The Defendant denies this allegation.

41. The Defendant admits this allegation.

42. The Defendant denies this allegation.

## AFFIRMATIVE DEFENSES

43. Equitable and Judicial Estoppel: Gwendolyn Wallace filed bankruptcies in 2022 and 2024 and failed to disclose any disputed interests, transfers, or claims against Mr. Edmondson, which now bars her current claims. Wallace is estopped from claiming an interest due to her previous bankruptcy filings where she failed to disclose the alleged fraud or contest Mr. Edmondson's title.

44. Unclean Hands and Fraud Upon the Court: The Debtor-Wallace made material misrepresentations regarding her debts and income and omitted key information about her rights in the property.

45. Lack of Standing: Wallace lacks standing to seek avoidance of a transfer that was never lawfully made to her to begin with.

46. Failure to State a Claim: The Amended Complaint lacks specificity required under Rule 9(b) regarding allegations of fraud and does not state a claim under either the Tennessee Uniform Fraudulent Transfer Act §66-3-101 et. seq or §66-3-301 or 11 U.S.C. § 544(b).

47. Waiver- There was a settlement agreement that Ms. Wallace entered into in 2022 wherein she agreed to sign over her interests in the property to Mr. Edmondson to prevent from being sued for fraud, coercion or duress. She knew that Mr. Edmondson was going to sue her for this via a letter she received from his attorney, Brent Hayes on January 8, 2021. When she signed the 2022 deed she was represented by counsel, Adrienne Love. Therefore, she cannot now claim that there was a fraudulent transfer under any common law or statute.

48. Good Faith Transferee- Defendant acted in good faith and provided reasonably equivalent value by restraining from suing Ms. Wallace for fraud/coercion/duress.

49. Fraud/Coercion/Duress/Undue Influence-Ms. Wallace engaged in fraud when the 2019 Deed was procured. She knew that Mr. Glass suffered from Dementia and Emphysema and that he did not have long to live. In fact, he died 2 months after the June 27, 2019, deed was signed. Knowing this she took Mr. Glass to her attorney's office on June 27, 2019, and got him to sign the deed giving her an interest in the property for no consideration. She was his caregiver and exuded undue influence over him and either forced or took him to her lawyer's office to sign the 2019 deed. The son Napoleon Edmondson has looked at the signature on the 2022 deed and believes that the signature on the deed may not be his father's.

## PRAYER FOR RELIEF

WHEREFORE, having fully responded to the Amended Complaint, Defendant Napoleon Edmondson respectfully requests that this Honorable Court:

1. **Dismiss the Amended Complaint** in its entirety with prejudice for failure to state a claim upon which relief may be granted;

2. **Deny all relief sought by the Trustee**, including avoidance of the 2022 Quitclaim Deed and any request for partition, sale, or recovery of the subject property;

3. **Declare** that the 2019 Quitclaim Deed is void or voidable on grounds of fraud, duress, or forgery;

4. **Declare** that any alleged interest of Gwendolyn Wallace in the real property is invalid and unenforceable;

5. **Award Defendant his costs**, reasonable attorney's fees, and such other and further relief as the Court deems just and proper.

**WHEREFORE NAPOLEON EDMONDSON takes the position of Third-Party Complaint and states as follows:**

### THIRD-PARTY COMPLAINT AGAINST DEBTOR GWENDOLYN CAMILLIA WALLACE

50. This Third Party-Complaint arising under 28 U.S.C. §§ 157 and 1334, and Federal Bankruptcy Rule 7014.

51. This claim arises from the same transaction or occurrence alleged in the Trustee's Amended Complaint.

52. Venue is proper under 28 U.S.C. § 1409.

53. This adversary proceeding involves state-law claims of fraud, forgery, duress, breach of contract declaratory judgment, and deed cancellation, which are non-core proceedings related to the bankruptcy case.

54. On or about June 27, 2019, Wallace accompanied Mr. Glass to attorney Adrienne Love's office to execute a quitclaim deed for his property (in which he owned a 100% fee simple interest) located in Nashville, Tennessee.

55. The deed gave Ms. Glass a joint tenant in common with rights of survivorship as stated in the deed.

56. The effect of this deed was that upon Mr. Glass's death she would receive a 100% interest in the property in fee simple.

57. At that time, Mr. Glass was gravely ill with Dementia and Emphysema and did not understand his rights.

58. Ms. Glass was his caregiver, lived with him and used her position to get him to either sign over his property to her or forged his signature.

59. This is evident because she used her attorney, Ms. Love to facilitate the transaction, Mr. Glass did not have his own attorney to advise him.

60. Alternatively, it is believed and alleged that Ms. Wallace forged Mr. Glass's signature and that he was not present when the signature was signed.

61. Napoleon Edmondson believes the signature is forged because he is familiar with his father's handwriting.

62. Wallace used her position of trust, proximity, and intimacy to obtain an interest in the property without lawful consideration or capacity.

63. When Mr. Edmondson found out about what happened, on January 8, 2021, Mr. Edmondson by and through his counsel, Brent Hays sent a letter to Gwendolyn Wallace informing her that the interest that she received in 2019 was procured by fraud and duress.

64. In that letter a request was made for the matter to be settled in lieu of a lawsuit being filed against her

65. Ms. Wallace then retained Ms. Love, the same lawyer that drafted the 2019 Quit Claim deed, to handle the situation.

66. As a result of negotiations, Ms. Wallace signed the 2022 deed giving Mr. Edmondson a interests in the property retaining a life estate.

67. She also agreed to pay all mortgage payments which included the real property taxes.

68. Since that time, Ms. Wallace has not paid mortgage at all and the property is in jeopardy of being foreclosed on.

69. She however remains in the home paying nothing.   It is expected she may be only paying utilities.

## COUNT I – ACUTAL AND CONSTRUCTIVE FRAUD /UNDUE INFLUENCE AND/OR  DURESS:

70. THIRD-PARTY PLAINTIFF incorporates all allegations as if stated herein.

71. Wallace knowingly took advantage of Mr. Glass's incapacity when she coerced him or used her position as his girlfriend/caregiver when he signed the June 27, 2019, deed, giving her an interest at her attorney's office.

72. The fact that she took or forced Mr. Glass to sign the deed at her attorney's office shows fraud/ duress/coercion and/undue influence.

73. She also signed the 2022 deed as a form of settlement to deter a lawsuit being filed against her for these actions.

74. When she agreed to sign the 2022 deed,  she knew that she had no intention of honoring her agreement when she failed to pay the mortgage as agreed, shortly thereafter.

75. Mr. Edmondson would have not settled with Ms. Wallace giving her a life estate if he had known she had no intention to honor their agreement by not paying the mortgage.

76. As a result of this, Mr. Edmondson detrimentally relied on the promise and now is facing the loss of the property due to Ms. Wallace's failure to pay the mortgage.

77. Also to avoid the settlement agreement she filed for bankruptcy on August 1, 2022 and then in May 1, 2024.

78. This lawsuit filed by the Trustee is a further attempt to avoid honoring the settlement agreement.

79. Since the trustee's position is that the deed in 2022 is fraudulent, Mr. Edmondson also alleges in the alternative that the 2019 deed is null in void due to the fraud/duress/coercion that took place in 2019 when Napoleon Glass involuntarily executed the deed or his signature was forged

## COUNT II – FORGERY:

80. THIRD-PARTY PLAINTIFF incorporates all allegations as if stated herein.

81. Wallace knowingly took advantage of Mr. Glass's incapacity.

82. Wallace forged the deed. This is actionable fraud entitling Plaintiff to cancellation and damages.

## COUNT III – DECLARATORY JUDGMENT:

83. THIRD-PARTY PLAINTIFF incorporates all allegations as if stated herein.

84. Pursuant to 28 U.S.C. § 2201, the Court should declare that Wallace has no valid legal interest in the property based on her actions in procuring an interests in the property in 2019.

85. Alternatively that the parties entered into an settlement agreement in 2022 and thus the 2022 deed only awards her a life estate.

## COUNT IV – QUIET TITLE:

86. THIRD-PARTY PLAINTIFF incorporates all allegations as if stated herein

87. Wallace's fraudulent interest clouds title.

88. Mr. Edmondson seeks to quiet title in his favor.

## COUNT V – RECISSSION OF DEED

89. THIRD-PARTY PLAINTIFF incorporates all allegations as if stated herein

90. Wallace knowingly took advantage of Mr. Glass's incapacity.

91. This entitles  Mr. Edmondson to rescission of the June 27, 2019, deed.

## COUNT VI – EQUITABLE ESTOPPEL AND JUDICIAL ESTOPPEL:

92. THIRD-PARTY PLAINTIFF incorporates all allegations as if stated herein

93. Wallace is estopped from claiming an interest due to her previous bankruptcy filings where she failed to disclose the alleged fraud or contest Mr. Edmondson's title.

## 94. COUNT VII – BREACH OF ORAL CONTRACT:

95. THIRD-PARTY PLAINTIFF incorporates all allegations as if stated herein

96. The parties entered into an oral settlement agreement in 2022 that if Mr. Edmondson did not sue Ms. Wallace for fraud/duress concerning how she acquired Mr. Glass's property in 2019, she would give him a fee simple interest in the property and in return she would retain a life estate and timely pay the mortgage.

97. She has since reneged on that promise by allowing him to be sued in this court for fraudulent transfer and placing his interests.

98. In addition she failed to pay the mortgage as agreed before any bankruptcies were filed.

99. Mr. Edmondson is now in danger of losing his fee simple interests in the property due to his breach and is entitled to damages.

## COUNT VIII – PROMISSORY ESTOPPEL

100.   THIRD-PARTY PLAINTIFF incorporates all allegations as if stated herein.

101.   Ms. Wallace made a clear and definite promise to Mr. Edmondson that if he did not sue her for fraud and undue influence as it related to her acquisition of the property in 2019, she would sign the 2022 deed over to him,

102.   She also promised that if she was given a life estate, she would make sure the mortgage payments were made on time.

103.   When she made these promises, Mr. Edmondson did not sue Ms. Wallace and allowed her to stay in the property.

104.   Because Ms. Wallace is in the home and did not pay the mortgage, the property is currently heading to foreclosure due to non-payment.

105.   Since Mr. Edmondson did not pursue his rights to sue Mr. Wallace, he detrimentally relied on her promise to pay the mortgage.

106.   He also is now in jeopardy of losing his interest in the property because of the mortgage not being paid and Ms. Wallace's new claim that the transfer was fraudulent.

## COUNT IX – UNJUST ENRICHEMENT

107.   THIRD-PARTY PLAINTIFF incorporates all allegations as if stated herein

108.   When Ms. Wallace received the life estate she did so with a promise that she would pay the mortgage.

109.   Because she made this promise to Mr. Edmondson, she was not subject to a lawsuit that he would have filed against her due to her actions in 2019 which gave her an interest in the property.

110. She has been living in the property for 3 years and has refused to pay the mortgage irrespective of her bankruptcy filings.

111. When she was not in bankruptcy she still refused to pay the mortgage in violation of the agreement.

112. She has retained a benefit of being allowed to remain in the house without paying a mortgage as agreed. It would be inequitable for her to retain that benefit without compensation.

### COUNT X – EXEMPTION FROM BANKRUPTCY DISCHARGE:

113. THIRD-PARTY PLAINTIFF incorporates all allegations as if stated herein.

114. Pursuant to 11 U.S.C. § 105(a), the Court has authority to issue any order necessary to preserve the estate. .

115. Before the bankruptcy was filed Ms. Wallace resided in the property but failed to pay the mortgage.

116. She as a life estate holder had a fiduciary duty to pay the real property taxes and interest on the mortgage.

117. She failed to do that and now the property is subject to foreclosure.

118. Wallace made false representations under oath in August 2022 and May 2024 and in this case regarding her debts and income.

119. For example, in her August 1, 2022, bankruptcy petition she failed to disclose that she transferred property to Mr. Edmondson in 2022.

120. She also made false statement under oath by omitting the 2022 Quitclaim Deed, failing to disclose her settlement agreement with Edmondson, and underreporting income.

121. She also failed to disclose these same facts in her May 1, 2024, bankruptcy petition.

Case 3:25-ap-90059 Doc 6 Filed 06/26/25 Entered 06/26/25 17:46:05 Desc Main
Document Page 12 of 15

122.   In her August 1, 2022,  bankruptcy petition, she stated under the oath that the value of the property was $375,000.00 but in the 2019 she stated it was worth $201,900.00.

123.   This fraudulent conduct should exclude this claim from discharge under 11 U.S.C. § 523(2)(A) and § 727(a)(4) for false oaths and concealment of assets.

## COUNT XI – RECISSSION OF DEED

124.   THIRD-PARTY PLAINTIFF incorporates all allegations as if stated herein.

125.   Mr. Edmondson is the only living son and heir of Mr. Glass and had it not been for Ms. Wallace's actions, he would have inherited the property.

126.   Wallace knowingly took advantage of Mr. Glass's incapacity. This entitles Mr. Edmondson to rescission of the June 27, 2019, deed should court rule the 2019 deed to be valid.

## COUNT XII – INJUNCTION- BANKRUPTCY COURT INJUNCTIVE RELIEF UNDER 11 U.S.C. § 105(a); RULE 7065

127.   THIRD-PARTY PLAINTIFF incorporates all allegations as if stated herein.

128.   Pursuant to 11 U.S.C. § 105(a), the Court has authority to issue any order necessary to preserve the estate.

129.   Mr. Wallace is entitled to equitable relief to preserve the real property at issue from waste neglect, or damage.

130.   The Debtor, Ms. Wallace who has a life estate has failed to pay the property taxes and or/maintain the property placing the Estate and remainderman's interest's at risk.

131.   Mr. Edmondson requests this court enjoin Ms. Wallace from damaging, transferring the property, require maintenance and insurance and grant any equitable relief this court deems just.

## COUNT XIII –CONSTRUSTIVE TRUST

132.    THIRD-PARTY PLAINTIFF incorporates all allegations as if stated herein.

133.    Wallace obtained an interest in the real property by fraud, duress, and undue influence over Mr. Glass, or alternatively, through forgery.

134.    The Court should impose a constructive trust in favor of Mr. Edmondson over any interest Wallace claims in the property to prevent unjust enrichment and preserve equitable title.

**135.**    Mr. Wallace is entitled to equitable relief to preserve the real property at issue from waste.

**WHEREFORE NAPOLEON EDMONDSON PRAYS:**

1.    Dismissal of the Trustee's Complaint for failure to state a claim.

2.    Order Ms. Wallace maintain the property in good condition.

3.    That Ms. Wallace pay the real property taxes, interests and insurance on the property.

4.    Prohibit any unauthorized transfers and encumbrances.

5.    Enjoin her from committing waste or failure to maintain the property.

6.    Declaration that the 2019 deed is void due to fraud, undue influence, coercion duress, or forgery.

7.    Declaratory judgment as to the invalidity of any interest claimed by Wallace.

8.    Quiet title in favor of Napoleon Edmondson and to rescind the 2019 deed.

9.    Impose a constructive trust;

10.    Damages in an amount in excess $75,000.00 which will include compensatory damages, punitive damages and  any monies that are due because of her failure to pay the mortgage on the property, the interests, and property taxes.

11.    Exclusion of Wallace's interest from bankruptcy protection under § 523 and § 727 and

Case 3:25-ap-90090   Doc 6   Filed 06/26/25   Entered 06/26/25 17:48:05   Desc Main
Document      Page 14 of 15

exclusion from bankruptcy discharge for any monetary damages awarded to Mr. Edmondson.

12.     Any relief this court deems equitable and just.

13.     For Debtor, Wallace to pay all Costs, attorney fees, and any further relief as this Court deems just.

                                        Respectfully submitted,

                                        **Wade Law Firm**

                                        */s/ Lorraine Wade*

                                        Lorraine Wade, BPR No. 22331
                                        199 Enon Springs Rd W Suite 100
                                        Smyrna, Tennessee 37216
                                        Lorrainewade@wadelaw.net
                                        (615) 915.0289
                                        *Counsel for Defendant, Third-Party Napoleon*
                                        *Edmondson*

                       **CERTIFICATE OF SERVICE**

This document was sent via the Federal Court Court's electronic filing system, via electronic mail and U.S. Mail to the following:

   Justin T. Campbell

   Thompson Burton

   1801 West End Ave Suite 1550,

    Nashville, Tennessee 37203

   email justin@thomspnburton.com

   On this 26th day of June 2025.

                       s/Lorraine Wade/s



SO ORDERED.
SIGNED 8th day of October, 2025

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

THIS ORDER HAS BEEN ENTERED ON THE DOCKET.
PLEASE SEE DOCKET FOR ENTRY DATE.

_____
Nancy B. King
U.S. Bankruptcy Judge

In re:                                          )
                                                )   3:25-bk-01435
GWENDOLYN CAMILLA WALLACE                        )   Chapter 7
                                                )
        Debtor.                                  )   Judge Nancy B. King
                                                )
_____               )
                                                )
EVA M. LEMEH, Trustee,                           )   Adv. No. 3:25-ap-90059
                                                )
        Plaintiff/Counter-Defendant,             )
                                                )
v.                                              )
                                                )
NAPOLEON EDMONDSON,                              )
                                                )
        Defendant/Third Party Plaintiff,         )
                                                )
v.                                              )
                                                )
GWENDOLYN CAMILLIA WALLACE,                      )
                                                )
        Debtor/Third-Party Defendant.            )

---

## ORDER

---

In accordance with the Memorandum Opinion filed contemporaneously with this Order, the Trustee's Motion to Dismiss Counts I, II, III, IV, V, XI, and XIII of Napolean Edmondson's Third-Party Complaint for failure to state a claim is **GRANTED** pursuant to Federal Rule of Civil Procedure 12(b)(6), as made applicable by Federal Rule of Bankruptcy Procedure 7012.

**IT IS SO ORDERED.**

---

**THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY
AS INDICATED AT THE TOP OF THE PAGE**

---